Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 285 | **DATE** | 3/20/2001 |
| **CASE TITLE** | Jose Jesus Salazar vs. Charles Dvorak, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Dvorak's Motion for summary judgment is granted in its entirety. Salazar's claims are dismissed. All pending motions are denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 2 2 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

MAR 20 2001

Judge Harry D. Leinenweber
U. S. District Court

JOSE JESUS SALAZAR,

        Plaintiff,

v.

CHARLES DVORAK, et al.,

        Defendants.

Case No. 00 C 285

Judge Harry D. Leinenweber

**DOCKETED**

MAR 2 2 2001

## MEMORANDUM OPINION AND ORDER

Jose Jesus Salazar, currently a federal prisoner at the Federal Correctional Institute in Bastrop, Texas, was shot in the head during his arrest on November 12, 1998. He has brought this pro se civil rights action claiming that Charles Dvorak, a Special Agent with the Drug Enforcement Administration (the "DEA"), violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments during his arrest on November 12, 1998. He claims that he has suffered headaches, blurred vision, hearing loss, and loss of balance as a result of the shooting. Salazar also sues Dvorak in his official capacity, and he seeks $1 million in compensatory damages and $5 million in punitive damages. Before the Court is Dvorak's motion for summary judgment.

## BACKGROUND

On November 12, 1998, Salazar, Jesus Garcia Guzman ("Guzman") and Javier Carrillo Santa Cruz ("Carrillo") attempted to transfer two large metal boxes containing cocaine from a semi-truck to a

minivan at the Days Inn parking lot in Joliet, Illinois. The authorities were watching, however, and after several hours of surveillance, they moved in. They identified themselves and quickly arrested Guzman and Carrillo.

According to Salazar, he heard the police, jumped from the minivan, and began walking quickly between it and the truck. Salazar alleges that he stopped when he saw an officer point a weapon at him. Dvorak, a special agent with the Drug Enforcement Administration ("DEA"), ran toward Salazar from behind with his gun drawn. As he caught up with Salazar, he grabbed him on the shoulder. Both lost their balance, and while trying to regain it, Dvorak tried to push Salazar off of him with his right hand, which held his gun.

It is unclear what happened next. Salazar alleges that he was handcuffed and led to the front of the truck. At that point, Dvorak allegedly screamed, "Fucking Mexican, get on the ground!" and began pushing against Salazar's head from behind with the hand that held the gun. The gun discharged as he was pushing Salazar away from him. Both Carrillo and Guzman testified during their depositions that just before the gun went off, Dvorak was pushing Salazar to get him to lie down on the ground.

Dvorak's story differs slightly. According to Dvorak, Salazar began running after he jumped out of the minivan. Dvorak caught up with him, grabbed Salazar by the shoulder, and both lost their

balance. To regain his balance, Dvorak pushed against Salazar's back while holding his gun, at which point it accidentally discharged. Nevertheless, Dvorak stipulated in his reply brief that for purposes of his motion he will agree with Salazar's version of the following facts: Salazar did not run when he exited the minivan, Salazar was shot in front of the minivan after being arrested, and Salazar was in a bent position prior to being shot.

Salazar was taken to St. Joseph Hospital in Joliet and treated for the gun shot wound, which had only grazed his scalp. His medical records state that the shooting was "intentional." However, the doctor who wrote that the shooting was intentional explained in her affidavit that she only assumed that it was intentional because DEA agents were effecting an arrest. She has no evidence that the shooting was actually intentional. Dvorak has consistently maintained that he did not intend for his gun to discharge, and Salazar submits no evidence contradicting this assertion.

Salazar seeks $6 million in damages. He originally claimed that Dvorak's actions violated his Fourth, Fifth, and Eighth Amendment rights, but he now concedes that his claims do not properly fall under the ambit of the Eighth Amendment. The discussion below will therefore focus on his Fourth and Fifth Amendment claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In weighing a motion for summary judgment, the court must take the facts in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1289 (7th Cir. 1997). The non-moving party must present evidence of a triable issue of material fact, and a fact is material when it would determine the outcome under the governing law. *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Dvorak correctly points out that local rules regarding summary judgment are applicable to *pro se* plaintiffs, but courts have discretion, particularly in *pro se* cases, to strictly apply or overlook transgressions of the local rules. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994); *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). If Salazar's Local Rule 56.1 Statement does not respond to Dvorak's Local Rule 56.1 Statement, then the facts in Dvorak's 56.1 statement may be deemed

admitted, but such admission does not result in automatic grant of summary judgment for defendant. *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). The evidence submitted must be admissible at trial under the Federal Rules of Evidence, *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996), but Salazar cannot create a sham fact issue by submitting affidavits that contradict prior depositions or other trial testimony. *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996).

## DISCUSSION

### Salazar's *Bivens* Claims

Salazar sues Dvorak in both his individual and official capacity, claiming that Dvorak's actions violated his Fourth and Fifth Amendment rights. It is clear from the undisputed facts that the relevant events in this case took place during an arrest. The police had identified themselves, drawn their guns, and seized Salazar. *See Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 200 (7th Cir. 1985). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), federal officials may be sued in their individual capacity when they have violated a person's constitutional rights. However, *Bivens* claims are limited to

intentional deprivations only. *Sterling v. United States*, 85 F.3d 1225, 1227-28 (7th Cir. 1996), *citing Parratt v. Taylor*, 451 U.S. 527 (1981). Where the alleged deprivation is caused by a mistake, the Constitution is not violated. *Graham v. M.S.Connor*, 490 U.S. 386, 395 (1989).

Courts have repeatedly held that accidental injuries occurring during arrests do not to give rise to constitutional violations. For example, in *Dodd v. City of Norwich*, 827 F.2d 1, 3-4 (2nd Cir. 1987), the court held that a police officer's accidental shooting of a burglary suspect while he was handcuffing the suspect did not violate the suspect's due process rights, since the conduct (the shooting) was not intentional. Similarly, in *Klein v. Ryan*, 847 F.2d 368, 372-75 (7th Cir. 1988), the court held that the use of deadly force by police against a robbery suspect fleeing the scene of the crime after being told to halt, who had no weapon and did not physically threaten the police officers, did not violate the suspect's Fourth and Fourteenth Amendment rights.

Claims of negligent behavior likewise fail to state a claim for relief under the Constitution. *Daniels v. Williams*, 474 U.S. 327, 323-33 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). Even gross negligence will not sustain the claim. *Salazar v. City of Chicago*, 940 F.2d 233, 240-41 (7th Cir. 1991); *Martin v. Tyson*, 845 F.2d 1451, 1457-8 (7th Cir. 1988), *cert. denied*, 488 U.S. 863 (1988). "The domain of *Bivens* . . . is limited to intentional

deprivations." *Sterling v. U.S.*, 85 F.3d. 1225, 1227 (7th Cir. 1996).

Salazar received instructions regarding Local Rule 56.1 requirements and the need to respond to each of defendant's material facts. Salazar's "Statement of Material Facts in Opposition to Defendant's Statement of Material Facts," however, failed to respond to each of Dvorak's material facts. Most importantly, Salazar fails to deny Dvorak's claim that the shooting was an accident, and as a result, the Court now views that contention as an admitted fact. He does point to the medical record, in which the emergency room doctor uses the word "intentional," but he fails to counter her explanation that this was only an assumption not based on any evidence that the shooting was actually intended. Salazar also submits Dvorak's trial testimony, in which Dvorak states that as he pushed off Salazar in an effort to regain his balance, his weapon accidentally discharged. By submitting this trial testimony in his response, Plaintiff's evidence supports rather than disputes this material fact.

The key issue in this case is whether this was an accidental or intentional shooting, and Salazar has failed to put that fact in genuine dispute. Salazar admits that the shooting was accidental. Indeed, Dvorak correctly points out that Salazar's statement of material facts describes the incident much the same way as he did.

Salazar does not dispute Dvorak's affidavit stating that the shooting was accidental, he fails to deny in his statement of facts Dvorak's allegations that the shooting was unintentional, and he even submits Dvorak's trial testimony that the shooting was accidental in support of his claim. The Court concludes that there is no dispute that the shooting was accidental. The other disputed facts, such as whether Dvorak actually called Salazar a "Fucking Mexican," whether the shooting occurred in front of the trucks or between the minivan and truck, and whether Salazar ran or walked fast upon exiting the minivan, are simply immaterial. As a result, summary judgment in favor of Dvorak is proper on Salazar's *Bivens* action.

Salazar's complaint could be liberally construed to include a claim that Dvorak used unreasonable force by having his gun drawn during the arrest. It is well established that the force used during an arrest must be reasonable. *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir. 1990). This objective reasonableness standard requires the review of the totality of the circumstances known to the officer at the time of his actions. *Ford v. Childers,* 855 F.2d 1271, 1274 (7th Cir. 1988). Whether the use of force was unreasonable depends on an evaluation of the particular circumstances, viewed from the standpoint of a reasonably objective officer. *Plakas v. Drinski,* 19 F.3d 1143, 1146-48 (7th Cir. 1994).

The accidental shooting of a suspect during an arrest does not necessarily preclude application of the reasonableness test. *Johnson v. City of Milwaukee,* 41 F.Supp.2d 917 (E.D. Wis. 1999). The reasonableness inquiry is an objective standard: whether the officer's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force, nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Id.* at 925 (*citing Graham v. Conner,* 490 U.S. 386, 397 (1989)). In excessive force cases, the Seventh Circuit has indicated that the reasonableness of a course of conduct cannot be assessed by looking only at the end result. *See Estate of Starks v. Enyart,* 5 F.3d 230 (7th Cir. 1993). When a shooting occurs, an inquiry into reasonableness requires scrutiny of the conduct leading up to the shooting. *Johnson,* 41 F.Supp.2d at 929. If the cause of the shooting was prior police conduct that was unreasonable, the accident may be a violation of the Fourth Amendment. *Id.*

In this case, the Court must decide whether it was objectively reasonable for officers conducting this night drug raid to have their weapons drawn. Salazar presents no evidence on the issue of the reasonableness of Dvorak's conduct during this arrest. However, the Court agrees with Dvorak that DEA agents conducting a

night raid with drawn weapons is reasonable behavior. Several factors contribute to this conclusion: the encounter occurred at night, the officers had reasonable suspicion that the suspects were engaging in drug trafficking, drug traffickers are often armed, and the suspects were not in full view of the approaching officers at the time of the initiation of the arrest. *See U.S. v. Serna-Barreto*, 842 F.2d 965, 967-68 (7th Cir. 1988); *U.S. v. Hatch*, 827 F.Supp. 536, 545 (N.D. Ind. 1993). Dvorak's behavior was appropriate under the circumstances, satisfying the objective reasonableness standard.

### Salazar's Tort Claim

Salazar also asserts a tort claim against Dvorak in his official capacity. The United States has certified that Dvorak was acting within the scope of his official duties. Pursuant to 28 U.S.C. § 2679(d)(1), the United States is substituted with respect to Salazar's tort claims. *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (recognizing that a suit against a federal official in his or her official capacity is a suit against the United States).

Under the doctrine of sovereign immunity, the United States may not be sued without its consent. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The only available remedy for Salazar would be under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 2671 et seq. The FTCA provides a limited waiver of sovereign

immunity for tort claims but requires a plaintiff to exhaust administrative remedies before such claims may be brought in district court. 28 U.S.C. § 2675. Under 28 U.S.C. § 2675, Salazar is required to present his tort claim administratively to the DEA prior to filing his claim here. Salazar has not alleged that he has pursued any administrative remedy with any federal agency, and as a result, his tort claim fails as well. *See Kanar v. United States*, 118 F.3d 527, 528 (7th Cir. 1997).

## CONCLUSION

Dvorak's motion for summary judgment is granted in its entirety. Salazar's claims are dismissed. All pending motions are denied as moot.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: *March 20, 2001*